IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v ) | CRIM. ACT. NO. 3:17cr04-WKW |
| ) | (WO) |
| CLAYTON POWELL ) | |
| JACK WEBB ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On January 11, 2017, defendants Clayton Powell ("Powell") and Jack Webb ("Webb"), were charged with possession with intent to distribute a mixture containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  Powell was also charged with possessing a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

On May 26, 2017, Powell filed a motion, premised on the Fourth Amendment to the United States Constitution, to suppress all items seized and statements obtained as a result of a traffic stop and search of his vehicle on February 17, 2016, in Lee County, Alabama, in the Middle District of Alabama.  (Doc. # 35 at 1).  Powell contends that the stop, seizure and subsequent search of his vehicle were unsupported by reasonable suspicion or probable cause, and, thus, all evidence seized should be suppressed.  He also asserts that statements obtained by Alcohol Tobacco and Firearms ("AFT") agent Stacy Van Der Westhuizen were obtained after he invoked his right to counsel in violation of *Miranda v. Arizona*, 384 U.S.

436 (1966) and *Edwards v. Arizona*, 451 U.S. 477 (1981) and are due to be suppressed. (Doc. # 35 at 3).

On June 5, 2017, Webb filed a motion, also premised on the Fourth Amendment, to suppress all items seized and statements obtained as a result of the traffic stop and search of Powell's vehicle on February 17, 2016. (Doc. # 38 at 1). Webb presents the same issue as Powell challenging the stop, seizure and subsequent search of the vehicle in that he argues the initial traffic stop was unsupported by reasonable suspicion or probable cause, and, thus, all evidence seized and statements made should be suppressed.

The court held an evidentiary hearing on the motions to suppress on June 20, 2017. Based on the evidence presented to the court and argument of the parties, the court concludes that the motions to suppress evidence are due to be denied, but Powell's motion to suppress his statement to ATF agent Van Der Westhuizen is due to be granted.

## II. FACTS

On February 17, 2016, narcotics investigator Donald Carter ("Carter") of the Russell County Sheriff's Department was assisting officer Newman ("Newman") with an unrelated investigation. Carter and Newman were parked on the side of the road in the Horseshoe area of Lee County, Alabama talking to a confidential informant when Carter observed a white Cavalier car approaching them. The Horseshoe area is a known high drug activity area. Carter recognized Powell driving the vehicle, and Carter knew from past experience that Powell was a drug dealer and drug user. Carter also noticed that Powell refused to make eye

contact with him, and that Powell was driving with stiff arms on the steering wheel. Carter told Newman that they needed to follow the car. When Carter pulled behind the vehicle, Powell accelerated and attempted to elude the officers.

Powell testified that he volunteered to give his friend and co-defendant Jack Webb a ride to a friend's house. As Powell approached the trailer where he was taking Webb, he noticed a black Tahoe sports utility vehicle ("SUV") parked on the side of the road. Powell recognized the SUV was clearly a police vehicle. He observed the officers in the vehicle talking to J.J. Shelton who was standing on the passenger side of the SUV. It is undisputed that Powell was not speeding, driving recklessly or otherwise committing any traffic infractions. According to Powell, as soon as the vehicle pulled behind him, the officers turned on blue lights and siren.[1] When asked what happened next, Powell admitted that he "ran," and within a very short distance was traveling in excess of 100 miles per hour. Webb testified that he too recognized the SUV as a police vehicle, and warned Powell to drive easy. As they passed the SUV, Powell said "man, they pulled out behind me." According to Webb, the officers then turned on their blue lights, Powell "stomped" on the gas and took off.

---

[1] Carter testified that he did not turn on his blue lights or siren until Powell failed to use a turn signal or stop at a stop sign approximately 2 miles from where he began to follow Powell. In this regard, the court does not find Carter's testimony credible. Carter testified that although Powell failed to stop at one stop sign, abruptly changed lanes, was driving with a switched car tag, and was speeding in excess of 100 miles per hour, he did not activate the blue lights and siren until both vehicles had traveled over at least 4 roads and made at 4 different turns. Carter asserted that he made the decision to turn his blue lights on only after Powell made an improper right hand turn because that is when he had probable cause to stop Powell. However, Carter also testified that he did not try to pull Powell over for failing to use his turn signal and he did not turn the blue lights on even though Powell continued to speed. Carter's testimony regarding when he turned his lights and siren on was inconsistent and incredible. Consequently, the court places no reliance on his statements regarding when he activated the lights and siren.

3

As Powell attempted to elude the officers, during a turn Webb jumped from the moving vehicle, and was arrested. After Webb jumped from the vehicle, Powell reached across the passenger seat and threw a firearm out of the window. Powell subsequently turned into a parking lot, abandoned his car and ran. He was found in the woods and taken into custody. After Powell was arrested, an evidence technician was sent to the area where Carter observed Powell discarding the gun. Carter subsequently directed the technician to the exact location, and within minutes, a canine officer located the weapon. Powell's vehicle was impounded and during the inventory search, officers found two bags containing suspected methamphetamine.

Once in custody, Powell was advised of his *Miranda* rights and he indicated at that time that he wanted a lawyer. He was not questioned further on that date. Twelve days later, Van Der Westhuizen interviewed Powell while he was still in custody. However, there is no dispute that during the intervening time between his initial invocation of his right to counsel and subsequent interview, Powell was not provided a lawyer, nor did he speak to one.

### III.  DISCUSSION

The issues before the court relate to the initial traffic stop and Powell's subsequent statement after he invoked his rights under *Miranda*. The court will address each issue seratim.

#### A.  Fourth Amendment violation

Powell and Webb allege that both the initial traffic stop and subsequent search of

Powell's vehicle were violative of the Fourth Amendment because Carter lacked reasonable suspicion or probable cause to initiate the traffic stop. "The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 9 (1968). *See also Navarette v. California*, — U.S. —, —, 134 S.Ct. 1683, 1687 (2014). Absent probable cause, law enforcement officials may briefly detain a person as part of an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in criminal activity. For brief investigatory stops, the Fourth Amendment is satisfied when "the officer has a reasonable, articulable suspicion that criminal activity "'may be afoot.'" *Arvizu*, 534 U.S. at 273 quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). When determining whether reasonable suspicion exists, courts must consider the totality of the circumstances to determine whether the police officer had a "particularized and objective basis" for suspected legal wrongdoing. *Arvizu*, 534 U.S. at 273 (citation omitted). Reasonable suspicion "does not require officers to catch the suspect in a crime. Instead, "[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (quoting *Gordon*, 231 F.3d at 754). Moreover, "[a] determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *Arvizu,* 534 U.S. at

5

277.

The court is required to examine the totality of the circumstances which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might elude an untrained person" *Id*. at 273. In so doing, "the reviewing court must give due weight to the police officer's experience." *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). The reasonable suspicion required for a *Terry* stop is more than a hunch, and considering the totality of the circumstances, must be supported by some minimal level of objective justification that the person engaged in unlawful conduct. *Sokolow*, 490 U.S. at 7-8.

Powell and Webb argue that Carter did not have reasonable suspicion to initiate a traffic stop because Powell had not violated any traffic laws.[2] Although the parties focused on whether Carter had reasonable suspicion to initiate the traffic stop, they ignore a fatal flaw in the motions to suppress – Powell was not seized when Carter activated his lights and siren to initiate the traffic stop. Powell readily admitted that he did not stop but sped away from Carter.

> "A person is 'seized' within the meaning of the Fourth Amendment "only when, by means of physical force or a show of authority, his freedom of

---

[2] At the evidentiary hearing, Powell argued and presented evidence that Carter had a personal and improper motive for stopping him. The law is clear that the officer's subjective intent is not dispositive. "[A]n officer's motive in making a traffic stop does not invalidate what is otherwise "objectively justifiable behavior" under the Fourth Amendment." The intent of the officer, actual or theoretical, is irrelevant to the determination of whether the traffic stop was valid. *See United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997). Furthermore, as the Supreme Court has said, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Thus, the defendants are entitled to no relief on this basis.

> movement is restrained." *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *see also Brendlin v. California*, 551 U.S. 249, 254, 127S.Ct. 2400, 2405, 168L.Ed.2d 132 (2007) ("A person is seized by the police and thus entitled to challenge the government's actions under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement....") (quotation marks omitted).

*United States v. Dolomon*, 569 F. App'x 889, 892 (11th Cir. 2014).

In this case, Powell was not seized because he fled as soon as Carter turned on the lights and siren. "An attempted seizure, without actual submission, is not a seizure for Fourth Amendment purposes." *Id*. *See also California v. Hodari D.*, 499 U.S. 621, 626 n. 2 ("[N]either usage nor common-law tradition makes an *attempted* seizure a seizure.") Although Carter attempted to initiate a traffic stop, because Powell did not submit to that show of authority, he was not seized until he was arrested in the woods. *See Hodari D.*, 499 U.S. at 629 ("since Hodari did not comply with that injunction [to stop] he was not seized until he was tackled.").

It is undisputed that Powell threw the firearm out of the moving vehicle before he abandoned the car and ran into the woods. The law is clear that abandoned property is not subject to a Fourth Amendment challenge. *Id*. ("[t]he cocaine abandoned while [the defendant] was running was in this case not the fruit of a seizure."); *United States v. Tinoco*, 304 F.3d 1088, 1117 (11th Cir. 2002) (defendants "effectively abandoned" the contraband when they threw cocaine into the ocean and "thus, [had] no Fourth Amendment standing to challenge the seizure."). Because Powell discarded the firearm before he was seized, he

7

abandoned it, and the firearm is "not suppressible as the fruit of an unconstitutional seizure." *See Dolomon*, 569 F. App'x at 893. *See also United States v. Jenkins*, 2015 WL 4393364, *3 (S.D. Fla. July 16, 2015) (Case No. 15-20091-CR) ("items abandoned during a suspect's flight from officers but before the flight is terminated by either force or submission to the pursuing officers' authority are not "fruit of a seizure."); *United States v. Jackson*, 2015 WL 6555437, *3 (S.D. Fla. Oct. 29, 2015) (Criminal Case No. 15-20612-CR) ("Because he discarded the guns before he was actually seized, . . . the guns had already been voluntarily abandoned and would not be suppressible as the fruit of an unconstitutional seizure.").

Furthermore, the court concludes that Carter had reasonable suspicion to attempt to stop Powell in the Horseshoe area. Carter testified that he recognized Powell as he was driving the white vehicle; he knew from past experience that Powell was a drug user and a drug dealer; and Powell was in a known high drug activity area.

> An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.

*Wardlow*, 528 U.S. at 124.

Carter also testified that by not looking at him, and driving with stiff arms, Powell's behavior was suspicious. "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id*. Finally, Powell and Webb testified that when Carter pulled in behind them and turned on the blue lights and siren, Powell fled at a high rate of speed.

8

"Headlong flight - wherever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing but it is certainly suggestive of such." *Id*.

"While none of these factors, by themselves, necessarily justifies an investigatory stop, they are each relevant in the determination of whether the agents had reasonable suspicion to stop [Powell]" *United States v. Powell*, 222 F.3d 913, 918 (11th Cir. 2000). In this case, regardless of whether Powell had violated any traffic laws, his presence in a high drug crime area, coupled with Carter's recognition of Powell, Carter's knowledge that Powell was a drug user who also sold drugs, and Powell's stiff posture and failure to acknowledge Carter, are sufficient to justify Carter's reasonable suspicion that Powell was engaged in illegal drug activity. Reasonable suspicion "does not require officers to catch the suspect in a crime. Instead, "[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *Acosta*, 363 F.3d at 1145 (quoting *Gordon*, 231 F.3d at 754). For these reasons, the court concludes that Powell and Webb's Fourth Amendment rights were not violated. The motions to suppress are due to be denied.

### B. Statements to ATF agent Van Der Westhuizen

Powell contends that his statements to ATF agent Van Der Westhuizen were obtained in violation of *Miranda, supra*, and *Edwards, supra*, and are due to be suppressed. (Doc. # 35 at 3). The court agrees. The undisputed facts demonstrate that when Powell was taken into custody and advised of his *Miranda* rights, he unequivocally invoked his right to counsel. It is also undisputed that there was no break in Powell's custody between his

9

invocation of his right to counsel and Van Der Westhuizen's interrogation of him. Finally, there is no dispute that Powell was not offered counsel and did not speak to counsel at any time between his initial arrest and the interview with Van Der Westhuizen. The law is clear "that an accused, such as [Powell], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself has initiated further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85. The United States concedes that at the time he was interviewed by Van Der Westhuizen, Powell was in custody; he had requested counsel; he had not been provided counsel; and he did nothing to initiate further communication with law enforcement. Under these facts, Powell's statement to Van Der Westhuizen is due to be suppressed as it was obtained in violation of *Miranda* and *Edwards*.

Webb also gave a statement to Van Der Westhuizen but there is no dispute that Webb was read his *Miranda* rights and knowingly and voluntarily waived his rights. Webb's motion to suppress his statement to Van Der Westhuizen is premised solely on the basis that it is the fruit of the illegal traffic stop and seizure. Because the court concludes that Webb's Fourth Amendment rights were not violated during the traffic encounter with Carter, his statement was not the fruit of the unconstitutional seizure and his motion to suppress his statement is due to be denied.

## IV.  CONCLUSION

For the reasons as stated, it is the RECOMMENDATION of the Magistrate Judge as follows:

1. that defendant Webb's motion to suppress (doc. # 38) be DENIED;

2. that defendant Powell's motion to suppress the physical evidence obtained as a result of the traffic stop and search (doc. # 35) be DENIED; and

3. that defendant Powell's motion to suppress his statements made to ATF agent Van Der Weesthuizen (doc. # 35) be GRANTED and that his statement be SUPPRESSED.

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **July 12, 2017.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)*.  See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of*

*Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th day of June, 2017.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE